UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BARRY C. McANARNEY, as he is EXECUTIVE DIRECTOR, MASSACHUSETTS LABORERS' HEALTH AND WELFARE FUND, MASSACHUSETTS LABORERS' PENSION FUND and MASSACHUSETTS LABORERS' ANNUITY FUND; JAMES V. MERLONI, JR., as he is ADMINISTRATOR, NEW ENGLAND LABORERS' TRAINING TRUST FUND; and JOSEPH BONFIGLIO, as he is TRUSTEE, MASSACHUSETTS LABORERS' LEGAL SERVICES FUND,<br>　　　　　　Plaintiffs,<br><br>vs.<br><br>ABSOLUTE ENVIRONMENTAL, INC. and ABSOLUTE ENVIRONMENTAL CONTRACTORS, INC.,<br>　　　　　　Defendants. | C.A. No. 15-12985 NMG |

*LEAVE TO FILE GRANTED ON MARCH 24, 2016*

**AMENDED VERIFIED COMPLAINT**

**NATURE OF ACTION**

1.　　This is an action brought pursuant to §§502 and 515 of the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. §§1132(a)(3) and (d)(1) and 1145 and §301 of the Labor Management Relations Act ("LMRA"), as amended, 29 U.S.C. §185, by employee benefit plans to enforce the obligations to make contributions and pay interest due to the plans under the terms of a collective bargaining agreement and the plans.

**JURISDICTION**

2.　　The Court has exclusive jurisdiction of this action pursuant to §502(a), (e) and (f) of ERISA, 29 U.S.C. §§1132(a), (e) and (f), and concurrent jurisdiction pursuant to §301 of the

LMRA, as amended, 29 U.S.C. §185, without respect to the amount in controversy or the citizenship of the parties.

## PARTIES

3. Plaintiff Barry C. McAnarney is the Executive Director of the Massachusetts Laborers' Health and Welfare Fund. The Massachusetts Laborers' Health and Welfare Fund is an "employee welfare benefit plan" within the meaning of §3(3) of ERISA, 29 U.S.C. §1002(3). It provides health, dental and prescription benefits and life insurance, accident insurance, and accident and sickness benefits to participants. The Fund is administered at 14 New England Executive Park, Burlington, Massachusetts, within this judicial district.

4. Plaintiff Barry C. McAnarney is also the Executive Director of the Massachusetts Laborers' Pension Fund. The Massachusetts Laborers' Pension Fund is an "employee pension benefit plan" within the meaning of §3(2)(A) of ERISA, 29 U.S.C. §1002(2)(A). It provides participants with a defined pension benefit. The Fund is administered at 14 New England Executive Park, Burlington, Massachusetts, within this judicial district.

5. Plaintiff Barry C. McAnarney is also the Executive Director of the Massachusetts Laborers' Annuity Fund. The Massachusetts Laborers' Annuity Fund is an "employee pension benefit plan" within the meaning of §3(2)(A) of ERISA, 29 U.S.C. §1002(2)(A). This Fund is a defined contribution fund. The Fund is administered at 14 New England Executive Park, Burlington, Massachusetts, within this judicial district.

6. Plaintiff James V. Merloni, Jr. is the Administrator of the New England Laborers' Training Trust Fund. The New England Laborers' Training Trust Fund is an "employee welfare benefit plan" within the meaning of §3(1) of ERISA, 29 U.S.C. §1002(1). This Fund trains

apprentices and journey workers in the construction industry. The Fund is administered at 37 East Street, Hopkinton, Massachusetts, within this judicial district.

7.  Plaintiff Joseph Bonfiglio is a Trustee of the Massachusetts Laborers' Legal Services Fund. The Massachusetts Laborers' Legal Services Fund is an "employee welfare benefit plan" within the meaning of §3(1) of ERISA, 29 U.S.C. §1002(1). The Fund is administered at 14 New England Executive Park, Burlington, Massachusetts, within this judicial district.

8.  The Health and Welfare, Pension, Annuity, Training and Legal Services Funds are multi-employer plans within the meaning of §3(37) of ERISA, 29 U.S.C. §1002(37). They are hereinafter collectively referred to as "the Funds." The Funds are third party beneficiaries of the collective bargaining agreement between Defendant Absolute Environmental, Inc. ("Absolute Environmental") and the Massachusetts Laborers' District Council ("Union").

9.  Defendant Absolute Environmental is a New Hampshire corporation with a principal place of business at 22 Trolley Lane, Salem, New Hampshire and is an employer engaged in commerce within the meaning of §3(5) and (12) of ERISA, 29 U.S.C. §1002(5) and (12) and within the meaning of §301 of the LMRA, 29 U.S.C. §185. Its New Hampshire Resident Agent is listed as Gary P. McCaffrey at 6 Walnut Terrace, Salem, New Hampshire. Absolute Environmental was incorporated in New Hampshire on August 10, 2004 and registered to do business in Massachusetts on October 8, 2004. Its Massachusetts Registered Agent is listed as Paul J. Plagge at 13 Sudbury Street, Maynard, Massachusetts.

10. Defendant Absolute Environmental Contractors, Inc. ("Absolute Environmental Contractors") is a Massachusetts corporation with a principal place of business at 114 Kenoza Avenue, Haverhill, Massachusetts and is an employer engaged in commerce within the meaning

of §3(5) and (12) of ERISA, 29 U.S.C. §1002(5) and (12) and within the meaning of §301 of the LMRA, 29 U.S.C. §185. Its Massachusetts Resident Agent is listed as William J. Barron at 114 Kenoza Avenue, Haverhill, Massachusetts. Its New Hampshire Resident Agent is listed as Elaine McCaffrey at 6 Walnut Terrace, Salem, New Hampshire. On information and belief, Absolute Environmental Contractors is the alter ego of Absolute Environmental. On information and belief, Absolute Environmental and Absolute Environmental Contractors formed a single employer.

## GENERAL ALLEGATIONS OF FACT

### *Absolute Environmental*

11. On or about January 8, 2010, Absolute Environmental agreed in writing to be bound to the terms of the Acceptance of Agreement and Declaration of Trust establishing Plaintiff Funds, to the terms of collective bargaining agreements requiring contributions to Plaintiff Funds, and to any successor agreements. A true and accurate copy of Absolute Environmental's signed Acceptance of Agreement and Declaration of Trust ("Acceptance of Agreement") is attached hereto as Exhibit A.

12. Because of the Acceptance of Agreement, Absolute Environmental is party to the Massachusetts State-Wide Wrecking and Environmental Remediation Agreement between the Union on behalf of Building Wreckers' Local Union 1421 and the Massachusetts Building Wreckers' and Environmental Remediation Specialists Association, Inc. (the "CBA"). A copy of the 2012-2016 CBA is attached hereto as Exhibit B. The CBA applies to covered work in the Commonwealth of Massachusetts and States of Maine, New Hampshire and Vermont. See Exhibit B at 2.

13. The CBA requires employers to make contributions to each of the Plaintiff Funds for each hour worked by covered employees at rates prescribed therein. Id. at 15-19.

14. The payment of contributions for all hours worked by all Fund participants is crucial to the financial integrity of all the Funds and to their ability to provide pension, health, and other benefits to those participants. The Funds have a minimum requirement of 1,000 hours worked in a 12-month qualifying period for participants to obtain what are known as "Plan A" health and welfare benefits and 700 hours worked in a 12-month qualifying period for participants to obtain what are known as "Plan B" health and welfare benefits.

15. Once contributions have been remitted for an employee for 700 to 1,000 hours of work in a 12-month qualifying period, that employee is entitled to the health and welfare benefits earned for a six-month increment of eligibility. As employers continue to remit contributions above and beyond those required to meet the 700 or 1,000 hour threshold, the Funds continue to credit the contributions for the additional number of hours to the participant so that the participant receives credit toward the participant's health and welfare eligibility as well as his or her pension.

16. The CBA also requires employers to remit contributions to the New England Laborers' Labor-Management Cooperation Trust, the New England Laborers' Health and Safety Fund, the Massachusetts Laborers' Unified Trust, and the Massachusetts Demolition Industry Advancement Program ("the non-ERISA Funds") for each hour worked by covered employees at prescribed rates together with their contributions to the Plaintiff Funds. Further, it specifies that dues and contributions to the Laborers' Political League ("LPL") shall be deducted from the pay of each employee and forwarded to the Funds' office. Id. at 19-22.

17. The CBA provides that all of the signatory employer's employees "shall become members of the Union after the eighth (8th) work day following the beginning of their employment and shall thereafter during the term of Agreement, maintain such membership in good standing as a condition of continued employment." Id. at 3. The Funds and the Union have an agreement which allows the Funds to collect the dues on behalf of the Union.

18. All employers that are delinquent in the payment of contributions are charged interest on the delinquency at the rate of 10 percent per annum, liquidated damages in the amount of 20 percent of the delinquency, and reasonable attorneys' fees and costs to collect the delinquency. Id. at 25-27.

19. Signatory contractors such as Absolute Environmental are obligated to submit remittance reports to the Funds on a monthly basis, on which they list the hours worked by their covered employees in the previous month and calculate the amount of contributions due the Funds for all work performed by those employees in a given month. They are also required to submit to periodic audits of their payroll-related records.

20. The CBA identifies the type of work that qualifies as "covered" work. This includes *inter alia* the "removal, handling and/or packaging of asbestos, lead paint, microbial, mold and all hazardous and toxic materials, oil and fuel tanks and other contaminates." Id. at 24. It also provides that Local 1421 "is the established prime source of skilled, licensed, trained, certified, medically approved and dependable labor, necessary and required to perform the work covered by this Agreement." Id. at 3.

21. The CBA is binding upon each signatory Employer "and its successors and assigns, and no provisions contained or incorporated herein shall be nullified or affected in any

manner as a result of any consolidations, sale, transfer, assignment, or any combination or other disposition of the Employer." Id. at 27.

22.     As a signatory contractor, Absolute Environmental has access to the "skilled, licensed, trained, certified" laborers supplied by Local 1421.  It is also be able to work for general contractors that are required by their own agreements with the Union to insure both that the terms and conditions of those agreements, including the payment of contributions to the Plaintiff Funds, apply equally to any subcontracted work and that their subcontractors are signatory to the CBA.  Id. at 5, 38.

23.     On information and belief, Gary McCaffrey is Absolute Environmental's President, Treasurer and Secretary and Richard Quinn is a corporate officer.  Copies of Absolute Environmental's 2010 and 2015 State of New Hampshire Annual Reports so identifying McCaffrey and Quinn are attached hereto as Exhibit C.  According to Absolute Environmental's website, absoluteenvir.com, Gary McCaffrey and Richard Quinn are also co-owners of Absolute Environmental.  A screenshot of Absolute Environmental's website homepage is attached hereto as Exhibit D.

24.     On January 8, 2010, the date that Absolute Environmental became a signatory contractor, bound to the terms of the CBA, Richard Quinn wrote to the Union, identifying jobs that it stated were exempt from the terms of the CBA.  According to the letter, a copy of which is attached as Exhibit E, those jobs were "either under contract or have already been bid as open shop."  He concluded the letter, "We look forward to a long and prosperous relationship with 1421" and signed it as a Principal of Absolute Environmental.

*Absolute Environmental Contractors*

25.     On information and belief, Elaine McCaffrey is Gary McCaffrey's wife and Susan Quinn is Richard Quinn's wife.

26.     On April 28, 2010, just three (3) months after Absolute Environmental became signatory to the CBA, Elaine McCaffrey and Susan Quinn became the directors of a newly-incorporated Massachusetts company, Absolute Environmental Contractors, Inc.  According to its corporate filings, Christopher McNulty was "Absolute Environmental Contractor's" President and Treasurer and William J. Barron was its Secretary.  The Articles of Organization of "Absolute Environmental Contractors," a copy of which is attached hereto as Exhibit F, identifies its purpose as the "business of environmental contracting, environmental mediation, and to engage in the business of conducting environmental assessments, environmental projects and to engage in any related activities."

27.     On or about February 28, 2014, Susan Quinn displaced Christopher McNulty as "Absolute Environmental Contractors'" President and Elaine McCaffrey became the Company's Treasurer.  A copy of the Statement of Change of Supplemental Information Contained in Article VIII of Articles of Organization ("Statement of Change") is attached hereto as Exhibit G.  A copy of "Absolute Environmental Contractors'" Annual Report, filed with the Massachusetts Secretary of State on April 9, 2015 and listing Susan Quinn as "Absolute Environmental Contractor's" President, is attached hereto as Exhibit H.

28.     On or about January 23, 2014, "Absolute Environmental Contractors" registered to do business in the State of New Hampshire, listing its principal office as 282 Main Street, Suite 301, Salem, New Hampshire.  Its corporate filing included a letter from "Absolute Environmental" dated January 7, 2014, advising the State of New Hampshire Corporate Division

that it "gives full consent to Absolute Environmental Contractors, Inc. to use their proposed business name in the State of New Hampshire." A copy of "Absolute Environmental Contractors" Application for Certificate of Authority, "Absolute Environmental's" letter and "Absolute Environmental Contractors'" "Absolute Environmental Contractors" 2015 Annual Report are attached hereto as Exhibit I.

29. In contrast to the Annual Report "Absolute Environmental Contractors" filed in Massachusetts on April 9, 2015, listing Susan Quinn as the company's President, "Absolute Environmental Contractor's" 2015 Annual Report for New Hampshire, dated March 19, 2015, identifies Elaine McCaffrey as the Company's President and Susan Quinn as a Director. Compare Exhibits H and I.

30. "Absolute Environmental Contractors" is not signatory to the CBA.

### *Alter Ego and Single Employer Evidence*

31. On information and belief, "Absolute Environmental Contractors" performs the same type of work that "Absolute Environmental" performs within the territorial jurisdiction of the CBA. See the Massachusetts Department of Environmental Affairs Asbestos Project Lookup for December 1, 2014 through June 30, 2015, listing both "Absolute Environmental" and "Absolute Environmental Contractors," attached hereto as Exhibit J. See N.H. Department of Environmental Services Asbestos Management & Control Program's list of licensed asbestos abatement contractors as of May 14, 2015 also listing both "Absolute Environmental" and "Absolute Environmental Contractors," attached hereto as Exhibit K.

32. On information and belief, "Absolute Environmental Contractors" and "Absolute Environmental" both operate out of 22 Trolley Lane, Salem, NH, the address that "Absolute

Environmental" lists on its corporate filings as its principal office. A picture of that location, with the signage "Absolute Environmental" is attached hereto as Exhibit L.

33.     On information and belief, the location of that "Absolute Environmental Contractors" lists with the Massachusetts Secretary of State Corporations Division as its principal office is actually the office address of Attorney William J. Barron, the Company's Secretary. Similarly, the location that "Absolute Environmental Contractors" lists with the New Hampshire Secretary of State as its principal office in New Hampshire is an office building. It has no attached warehouse and no evidence of trucks or supplies leaving from or reporting to that location.

34.     On information and belief, the 22 Trolley Lane address is where the companies' trucks, warehouse and supplies are maintained. Upon information and belief, the same trucks which, like the building, are labelled only as "Absolute Environmental," are used on both "Absolute Environmental" and "Absolute Environmental Contractors" jobs. A picture of one of those trucks is attached hereto as Exhibit M.

35.     Upon information and belief, both companies use the same estimator(s), clerical staff and supervisors, who also work from the 22 Trolley Lane location.

36.     Upon information and belief, 22 Trolley Lane is also the location where laborers first report, whether they are working on jobs for "Absolute Environmental" or for "Absolute Environmental Contractors," and it is where they receive their checks at the end of the week, again regardless of whether they are working on jobs for "Absolute Environmental" or for "Absolute Environmental Contractors."

37.     In fact, upon information and belief, many, if not all, of the same laborers work interchangeably for "Absolute Environmental" and "Absolute Environmental Contractors."

Upon information and belief, when these laborers work for "Absolute Environmental," they are paid with red checks, Union dues are deducted from their checks; they are paid the wage rates set forth in the CBA and fringe benefit contributions are remitted to Plaintiff Funds on their behalf. Upon information and belief, when they work for "Absolute Environmental Contractors," they are paid with green checks at a wage rate far below the CBA rates of pay, no dues are deducted from their pay and no contributions are remitted to Plaintiff Funds on their behalf.

38.  For example, in or about January, 2015, laborer Jean C. Jimenez, who is a licensed and certified asbestos supervisor and member of Laborers' Local 175, was recruited to be an employee by Dana Stark, a supervisor for both "Absolute Environmental" and "Absolute Environmental Contractors." Jimenez's first job was at the Prudential Center at 800 Boylston Street, Boston, MA, followed by a job at the Salem Power Plant in Salem, MA.

39.  Jimenez reported to the 22 Trolley Lane, Salem, NH location each day that he was working on the Prudential Center and Salem Power Plant jobs to pick up an "Absolute Environmental" truck and supplies to transport to the job sites.

40.  On Friday afternoons of the weeks that he worked at the Prudential Center and Salem Power Plant jobs, Jimenez reported to the 22 Trolley Lane, Salem, NH location where an employee asked him if he had worked on a "union" or "non-union" job. When he indicated that he worked on a "union" job, she handed him red checks drawn on an account of Absolute Environmental, Inc. These checks showed Jimenez's pay to be at the Union rate of $34.75 per hour, dues were deducted from his pay and contributions were remitted on his behalf to the Funds. These checks also showed a deduction for "medical" although there is no provision in the CBA for such deductions. According to the Massachusetts Department of Environmental Protection, "Absolute Environmental" was the registered contractor on those jobs. See Exhibit J.

41. After the Salem Power Plant job, Jimenez and some of his co-workers were sent to work at a job at 647 Summer Street in South Boston, MA. As with the Prudential and Power Plant jobs, Jimenez reported each morning to the 22 Trolley Lane location to pick up an "Absolute Environmental" truck and supplies.

42. Jimenez and his co-workers performed the same type of work at the Summer Street location that they had performed on the Prudential and Power Plant jobs, i.e. the type of work for which contributions are due to the Funds. However, shortly before Jimenez was to be paid, he was told by Stark that this was a "non-union job" and that he would be receiving "regular" pay, which was $17.00 per hour. When Jimenez reported to 22 Trolley Lane for his pay, he received green checks from Absolute Environmental Contractors, Inc., showing a $17.00 per hour pay rate. Dues were not deduced although "medical" payments were. No contributions were remitted to the Funds for these hours.

43. Jimenez and his co-workers received the same "regular" pay rate for their next job at the YMCA in Roxbury, MA. According to the records of the Massachusetts Department of Environmental Protection, Absolute Environmental Contractors was the registered contractor on both the Summer Street and YMCA jobs. Copies of some of Mr. Jimenez's pay checks from Copies of several of Jimenez's checks from "Absolute Environmental" and "Absolute Environmental Contractors" are attached hereto as Exhibit N.

44. Upon information and belief, most if not all of the laborers employed by both companies have Union cards which they were required to present on jobsites, if requested, even when in fact they were paid by "Absolute Environmental Contractors" at the non-contractual rate of pay.

12

45. On information and belief, the named corporate officers of "Absolute Environmental Contractors," i.e. Elaine McCaffrey and/or Susan Quinn, are not involved in the running of their company's operations. Upon information and belief, both "Absolute Environmental" and "Absolute Environmental Contractors" are managed by Gary McCaffrey and Richard Quinn.

46. Both "Absolute Environmental" and "Absolute Environmental Contractors" use the same website. "Absolute Environmental's" website lists that address as nhoffice@absoluteenvir.com. See Exhibit D. "Absolute Environmental Contractor" lists its email address on the State of Connecticut eLicensing Website as maoffice@absoluteenvir.com. A screenshot of that listing is attached hereto as Exhibit O.

47. On information and belief, although "Absolute Environmental" and "Absolute Environmental Contractors" perform work in Massachusetts and New Hampshire on jobs for which Workers' Compensation coverage is required, "Absolute Environmental" only has a New Hampshire policy while "Absolute Environmental Contractors" only has a Massachusetts policy.

48. Absolute Environmental, Inc. and Absolute Environmental Contractors, Inc. are owned and managed by members of the same families; they operate out of the same building with the signage "Absolute Environmental"; they conduct the same type of business; they use the same trucks, equipment, supplies and email address; they share management, supervisory and laborer employees; and they have worked together to evade their obligation to the Funds such that they are alter egos of each other.

**COUNT I - VIOLATION OF ERISA**

49. Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 48 above.

50. Absolute Environmental Contractors is the alter ego of Absolute Environmental.

51. Absolute Environmental Contractors and Absolute Environmental are a single employer with a single appropriate bargaining unit.

52. By failing to make contributions to the Funds for covered work performed by employees of "Absolute Environmental Contractors," "Absolute Environmental" and "Absolute Environmental Contractors" are jointly and severally liable for all contributions owed on behalf of all employees of either or both companies who performed work covered by Absolute Environmental's CBA, and their failure to make those contributions violates §515 of ERISA, 29 U.S.C. §1145. "Absolute Environmental" and "Absolute Environmental Contractors" are also jointly and severally liable for interest, liquidated damages, and attorneys' fees and costs as mandated by ERISA, 29 U.S.C. §1132(g).

53. A copy of this Complaint is being served upon the Secretary of Labor and the Secretary of the Treasury by certified mail as required by §502(h) of ERISA, 29 U.S.C. §1132(h).

**COUNT II - VIOLATION OF COLLECTIVE BARGAINING AGREEMENT - DELINQUENT CONTRIBUTIONS, INTEREST, AND DUES**

54. Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 53 above.

55. The CBA is a contract within the meaning of §301 of the LMRA, 29 U.S.C. §185.

56. The failure of "Absolute Environmental" and "Absolute Environmental Contractors" to pay the contributions due for work performed by employees of "Absolute Environmental Contractors," to remit Union dues, and to submit remittance reports violates the terms of the CBA.

**WHEREFORE**, Plaintiffs request this Court grant the following relief:

      a.      Order "Absolute Environmental" and "Absolute Environmental Contractors" to make available to the Plaintiff Funds or their duly authorized representative all of their payroll records, including, but not limited to, file copies of contribution reports, payroll tax returns, employees' earning records and hours worked, weekly payroll registers, certified payrolls, cash disbursement journals and a complete listing of all job locations through the date of the Court's order for the purpose of ascertaining the amounts, if any, of unpaid contributions owed for that period;

      b.      Enter a preliminary and permanent injunction enjoining "Absolute Environmental" and "Absolute Environmental Contractors" from refusing or failing to permit the Plaintiff Funds to audit the payroll records as prayed for in the preceding paragraph;

      c.      Enter a preliminary and permanent injunction enjoining "Absolute Environmental" and "Absolute Environmental Contractors" from refusing or failing to pay contributions and interest owed to the Funds for any and all covered work performed by employees of "Absolute Environmental" and "Absolute Environmental Contractors";

      d.      Enter judgment in favor of the Funds and against Defendants "Absolute Environmental" and "Absolute Environmental Contractors" on Count I in the amount of all contributions due for work performed by employees of "Absolute Environmental Contractors" from April, 2010 through the present, plus any additional amounts determined by the Court to be owed to the Funds by "Absolute Environmental" and/or "Absolute Environmental Contractors," or which may become due during the pendency of this action, together with interest on the unpaid contributions at 10 percent per annum, liquidated damages in an amount equal to 20 percent of the total of unpaid contributions or the total interest owed, whichever is greater, reasonable attorneys' fees, and costs, all pursuant to 29 U.S.C. §1132(g)(2);

  e. Enter judgment in favor of the Funds and against Defendants "Absolute Environmental" and "Absolute Environmental Contractors" on Count II for the amount of any unpaid contributions and dues from April, 2010 through the present, plus any additional amounts determined by the Court to be owed to the Funds or which may become due during the pendency of this action; and

  f. Such further and other relief as this Court may deem appropriate.

            Respectfully submitted,

            BARRY C. McANARNEY, as he is
            EXECUTIVE DIRECTOR,
            MASSACHUSETTS LABORERS'
            HEALTH AND WELFARE FUND, *et al.*,

            By their attorneys,

            /s/ Anne R. Sills
            Anne R. Sills, Esquire
            BBO #546576
            Alexander Sugerman-Brozan, Esquire
            BBO #650980
            Segal Roitman, LLP
            111 Devonshire Street, 5th Floor
            Boston, MA  02109
            (617) 742-0208, Ext. 232
            asills@segalroitman.com

Dated: April __6__, 2016

## **VERIFICATION**

I, Barry C. McAnarney, Executive Director for the Massachusetts Laborers' Health and Welfare, Pension, and Annuity Funds, verify that I have read the above Verified Complaint, and the factual allegations set forth in paragraphs 1-33 and 45-54 therein are true and accurate based on my personal knowledge, except for those allegations based on information and belief, and, as to those allegations, I am informed and believe them to be true.

  SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY THIS 6TH DAY OF APRIL, 2016.

                       Barry C. McAnarney

## **VERIFICATION**

I, Jean C. Jimenez, verify that I have read the above Verified Complaint, and the factual allegations set forth in paragraphs 34-44 therein are true and accurate based on my personal knowledge, except for those allegations based on information and belief, and, as to those allegations, I am informed and believe them to be true.

SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY THIS 30TH DAY OF MARCH, 2016.

*[signature]*
Jean C. Jimenez

ARS/ars&ts
6306 15-255/proposed-amend-complt.doc