# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BARRY C. MCANARNEY, as he is EXECUTIVE DIRECTOR, MASSACHUSETTS LABORERS' HEALTH AND WELFARE FUND, MASSACHUSETTS LABORERS' PENSION FUND, and MASSACHUSETTS LABORERS' ANNUITY FUND; JAMES V. MERLONI, JR., as he is ADMINISTRATOR, NEW ENGLAND LABORERS' TRAINING TRUST FUND; and JOSEPH BONFIGLIO, as he is TRUSTEE, MASSACHUSETTS LABORERS' LEGAL SERVICES FUND, <br><br> Plaintiffs, <br><br> v. <br><br> ABSOLUTE ENVIRONMENTAL, INC. <br><br> and <br><br> ABSOLUTE ENVIRONMENTAL CONTRACTORS, INC., <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) )  C.A. No. 15-cv-12985-NMG |

## ABSOLUTE ENVIRONMENTAL, INC.
## AND ABSOLUTE ENVIRONMNENTAL CONTRACTORS, INC.'S
## MEMORANDUM IN SUPPORT OF THEIR MOTION
## TO DISMISS THE AMENDED VERIFIED COMPLAINT

ABSOLUTE ENVIRONMENTAL, INC.
and ABSOLUTE ENVIRONMENTAL
CONTRACTORS, INC.

Howard M. Cooper (BBO #543842)
Benjamin J. Wish (BBO #672743)
TODD & WELD LLP
One Federal Street, 27th Floor
Boston, MA 02110
(ph) (617) 720-2626

## i. Introduction

Defendants Absolute Environmental, Inc. ("AEI") and Absolute Environmental

Contractors, Inc. ("AEC") (together, "Defendants") respectfully submit this

memorandum in support of their motion to dismiss the Amended Verified Complaint (the

"Complaint").  Pursuant to F. R. Civ. P 12(b)(6), based upon certain core facts Plaintiffs[1]

allege and/or fail to allege, the Complaint fails to state a claim upon which relief can be

granted.

Plaintiffs assert claims against AEI and AEC under ERISA (Count I) and for

breach of a certain Collective Bargaining Agreement ("CBA") between the

Massachusetts Laborers' District Council (the "Union") on behalf of Building Wreckers'

Local Union 1421 and the Massachusetts Building Wreckers' and Environmental

Remediation Specialists Association, Inc. (Count II). Complaint (Dkt. No. 25) ¶¶ 9, 11–

12. Plaintiffs base both Counts, and seek damages in the form of allegedly unpaid

benefits for union members, on a claim that AEC is somehow bound to the CBA even

though the Complaint concedes, as it must, that AEC is *not* a signatory to the CBA. Id.

¶¶30, 49-56. The Complaint does not (and cannot) allege that AEI, which *did* sign the

CBA, failed to make required contributions to the pension funds. See generally

Complaint.

Plaintiffs' Complaint advances "alter ego" or "single employer" theories as the

legal basis for binding non-signatory AEC to the CBA. Id. ¶¶31–48. Both theories fail as

a matter of law under clear First Circuit precedent. Indeed, under governing precedent,

---

[1] "Plaintiffs" or "the Funds" are Barry C. McAnarney, as he is Executive Director, Massachusetts Laborers'
Health And Welfare Fund, Massachusetts Laborers' Pension Fund, And Massachusetts Laborers' Annuity
Fund; James V. Merloni, Jr., As He Is Administrator, New England Laborers' Training Trust Fund; And
Joseph Bonfiglio, as he is Trustee, Massachusetts Laborers' Legal Services Fund.

the activities of AEI and AEC pled in the Complaint constituted the lawful and permitted operation of a so-called "double-breasted" business in which two companies exist side-by-side with one company a CBA signatory that performs union work and the other a non-union company performing "open shop" non-union work. Such arrangements are "neither uncommon nor inherently unlawful." <u>Massachusetts Carpenters Cent. Collection Agency v. A.A. Bldg. Erectors, Inc.</u>, 343 F.3d 18, 22 (1st Cir. 2003) (hereafter "<u>A.A. Bldg. Erectors</u>").[2]

The Funds' "alter ego" theory fails where the Complaint fails to allege fraud (let alone allege fraud with particularity), which is the critical element necessary to establish that a non-signatory company is the "alter ego" of a signatory company and thus bound to a CBA.[3] The First Circuit and other Circuits have made clear that there is no "potential inequity" justifying the application of the alter ego doctrine absent allegations that: 1) the "double-breasted" defendant parties *deceived* the Union about their relationship; and 2) the deception somehow caused the Union to be left "worse off." <u>See</u> <u>A.A. Bldg. Erectors</u> at 22 (affirming grant of summary judgment for defendant-employers against alter ego claim). Ignoring <u>A.A. Bldg. Erectors</u>, Plaintiffs allege here only that the alter ego doctrine should be applied based solely on allegations that AEI and AEC were "joined at the hip" in their operation. Complaint, ¶¶31–48. As the First Circuit explained in <u>A.A.</u>

_____

[2] Indeed, as the Chief Justice of this Court (Saris, J.) recently explained in the context of a largely dismissed criminal matter involving double-breasted companies in the same industry as Defendants, **"[d]ouble-breasting is completely legal under the laws of this circuit so long as there is no fraud.**" <u>U.S. v. Thompson, et al.,</u> Criminal No. 16-10014-PBS, Hearing Tr. (May 4, 2017), at 7:25–8:2, a true and correct copy of which is attached here as <u>Exhibit A</u> (emphasis supplied).

[3]       Plaintiffs do not allege fraud for the very simple reason that they cannot do so. It is undisputed that Defendants timely disclosed all relevant facts about their double-breasted operation to Plaintiffs and Plaintiffs proceeded with the business relationship without complaint including in issuing clean audit reports about benefits. Defendants' motion here does *not* rely upon facts outside of the Complaint. Defendants nevertheless refer the Court to their alternative motion for summary judgment filed simultaneously herewith, which they ask the Court to reach only if the instant motion is denied.

Bldg. Erectors, Inc., however, such allegations are ***"not enough."*** 343 F.3d at 22–23 (emphasis supplied).

Apparently recognizing that their alter ego theory is not viable, the Funds amended their original Complaint to assert a "single employer" theory, Dkt. No. 25, but that theory fares no better. First, it is well-established that "[i]t is the alter ego finding which will bind a nonsignatory to a collective bargaining agreement, ***not a finding of single employer status***." Penntech Papers, Inc. v. N.L.R.B., 706 F.2d 18, 24 (1st Cir. 1983) (emphasis supplied). Second, to bind a non-union company to a CBA apart from the alter ego doctrine a plaintiff must prove that the employees of the two companies constitute a "single bargaining unit." Id. This Court, however, lacks jurisdiction to make that determination because doing so would "invade[] the statutory province of the [National Labor Relations Board]." S. Prairie Const. Co. v. Local No. 627, Int'l Union of Operating Engineers, AFL-CIO, 425 U.S. 800, 803–804 (1976).

For these reasons, discussed in detail below, the Court should dismiss the Complaint.

## ii. Facts

Taking the facts alleged in the Complaint as true, and considering the facts not alleged as well, the Complaint alleges as follows:

AEI is an asbestos abatement contractor "incorporated in New Hampshire on August 10, 2004 and registered to do business in Massachusetts on October 8, 2004" that operated as a *non-union* "open shop" employer for years. Complaint, ¶¶ 9, 31. More than five years after AEI's formation, on or about January 8, 2010 it signed the Acceptance of Agreement and Declaration of Trust through which it became a union employer for the

very first time and a signatory to the CBA. <u>Id</u>. ¶¶ 9, 11–12. The CBA required AEI to remit certain money to the Funds for employee benefits. <u>Id</u>. ¶¶ 9, 15–16. AEC is a Massachusetts corporation incorporated on April 28, 2010. <u>Id</u>. Ex. F. AEC "is not signatory to the CBA." <u>Id</u>.¶ 30.

The operations of AEI and AEC overlap in certain respects. Among other things, there is similarity in their corporate officers and both companies are in the business of asbestos removal. <u>Id</u>. ¶¶ 23, 31. The Funds also allege "upon information and belief, that many, if not all" of the same employees work for both AEI and AEC. <u>Id</u>. ¶ 37. The Complaint fails to provide facts supporting this conclusory allegation or state what it means by "many." <u>Id</u>. The Complaint identifies one employee, Jean C. Jimenez ("Mr. Jimenez") and alleges he worked for both companies. <u>Id</u>. ¶¶ 38–43.  As to Mr. Jimenez, the Complaint does not allege that any work he performed for AEC harmed the Funds. <u>See generally</u> Complaint.

The Complaint does not allege that AEI and/or AEC deceived anyone, including the Union or the Funds, about their relationship. <u>See generally</u> Complaint. Indeed the CBA expressly provides that AEI may subcontract work to non-union companies like AEC: "The Employer may utilize non-union subcontractors of its choice provided that prior to the project start date" it satisfies certain conditions. <u>Id</u>. Ex. B, at 5–6.

The Complaint further recognizes that AEI and AEC took steps to maintain the separateness of the companies.  <u>Id</u>. ¶37. For example, each company issued a different colored paycheck from the other. AEI issued red pay checks to laborers, from which "Union dues are deducted . . . [and laborers] are paid the wage rates set forth in the CBA and fringe benefits contributions are remitted to Plaintiff Funds on their behalf." <u>Id</u>. AEC

issued green checks at a wage rate not based on the CBA, and without union dues or remittances being paid to the Funds. Id.

The Complaint fails to allege that AEI ever sought to avoid its obligations under the CBA by misdirecting union work to non-union AEC. See generally Complaint. The Complaint fails to allege that any change to the structure or operations of AEI or AEC deceived or caused harm to the Union or the Funds. Id. It similarly does not allege that the Funds were unaware that AEC was formed to undertake non-union "open shop" work. Id. It alleges in a single conclusory sentence that AEI and AEC "have worked together to evade their obligations to the Funds." Id. ¶48. Finally, the Complaint fails to allege that the National Labor Relations Board ("NLRB") has determined the AEI and AEC constitute a single bargaining unit. See generally id.

### iii. Legal Standard

To avoid dismissal, a complaint must allege facts which, if proven, "raise a right to relief above the speculative level[.]" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 557 (2007). A claim "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). It is not enough for a complaint to plead facts that are "merely consistent with a defendant's liability," and thus would show only that it is possible, rather than plausible, that a claim is true. See Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557).  Likewise, it is not enough to plead conclusory allegations. Id.

### iv. Argument

### I.      **Plaintiffs' Alter Ego Theory Fails As a Matter of Law.**

Plaintiffs' alter ego theory fails as a matter of law to support Count 1 (ERISA)

and 2 (Breach of the CBA) of the Complaint under A.A. Bldg. Erectors where the Complaint fails to allege that Defendants deceived or defrauded the Funds or the Union and/or that AEC was ever used to shift union business away from AEI. Plaintiffs claim that AEI and AEC share certain common features and employed some undefined number of common employees. Complaint, ¶¶ 23, 31, 37–43. As a matter of First Circuit law, however, absent fraud, even if the companies were "joined at the hip," "*this is not enough*" to justify the application of the alter ego doctrine. A.A. Bldg. Erectors, Inc., 343 F.3d at 22 (emphasis supplied).

Here, the Complaint openly concedes that AEI was formed first and *operated as a non-union* company *for years* before it signed the CBA and AEC was formed. Complaint, ¶¶9, 31.  As discussed in A.A. Bldg. Erectors, however, the paradigmatic problem at which the "alter ego" theory is directed is where a union company which is a signatory to a CBA secretly establishes a non-union company in order to shift union work to the non-union company in order for the union company to avoid its obligations under a CBA. 343 F.3d at 22. More importantly, the Complaint fails to plead that Plaintiffs were unaware of AEC operating as an "open shop" alongside AEI and likewise fails to plead that any work was improperly diverted from AEI to AEC. See generally Complaint. Under such circumstances, as Judge Stearns held in A.A. Building Erectors at the trial court level, it is "self-evident" that there is no fraud and no harm to the Funds. Massachusetts Carpenters Cent. Collection Agency v. A.A. Bldg. Erectors, Inc., 208 F. Supp. 2d 94, 98-99 (D. Mass. 2002) (Stearns, J.)  aff'd, 343 F.3d 18 (1st Cir. 2003).

    **a.  The Alter Ego Doctrine Is An Equitable Doctrine of Which Fraud is an Indispensable Element.**

Courts have uniformly recognized that the alter ego doctrine is equitable in nature

and available to prevent an employer from fraudulently avoiding its obligations under a pre-existing CBA.  As the First Circuit stated in <u>A.A. Bldg. Erectors,</u> it is "a tool to be employed when the corporate shield, if respected, would inequitably prevent a party from receiving what is otherwise due and owing from the person or persons who have created the shield." 343 F.3d at 21–22. The animating purpose of the alter ego doctrine is to ensure that "[e]mployers may not create non-union 'alter egos' for the fraudulent purpose of shifting union work to a non-union employer and thereby engaging in a sham to avoid their collective bargaining obligations." <u>S. California Painters & Allied Trades, Dist. Council No. 36 v. Rodin & Co.</u>, 558 F.3d 1028, 1032 (9th Cir. 2009). It is the plaintiff's burden to prove that the employer created a "sham" non-union employer to avoid its existing obligations. <u>S. California Painters & Allied Trades, Dist. Council No. 36.</u>, 558 F.3d at 1032.

    <u>A.A. Bldg. Erectors</u> is controlling here. 343 F.3d at 22. As here, the plaintiffs in <u>A.A. Bldg. Erectors</u> failed to present evidence of fraud and the First Circuit affirmed this Court's (Stearns, J.) dismissal of the plaintiffs' alter ego claim that the non-union employer defendant in a double breasted operation was liable for contributions to a union pension funds under a CBA it did not sign, but its affiliated union company did. <u>Id</u>. The First Circuit expressly rejected Plaintiffs' theory here that the alter ego doctrine should apply because the union and non-union companies were operationally "joined at the hip." <u>Id</u>. at 20–21. As the First Circuit explained, the alter ego doctrine is not applied "reflexively" where companies share many characteristics like continuity of ownership, management overlap, and similarity of business purpose. <u>Id</u>.[4]

---

[4] "The [alter ego] doctrine is not a formalistic mechanism for reflexively regarding distinct jural entities as legally interchangeable whenever the entities' relationship is marked by a sufficient number of the

The First Circuit cited two reasons for its holding. Id. at 21–22. *First*, there was no evidence that the union company deceived the union about its deeply intertwined relationship with its non-union affiliate. Id. "This matters because arrangements such as those between [union employer] and [non-union employer] *are neither uncommon nor inherently unlawful*." Id. (emphasis supplied). see also Trustees of Resilient Floor Decorators Ins. Fund v. A & M Installations, Inc., 395 F.3d 244, 248 (6th Cir. 2005) (Absent an "alleg[ation] . . . that [the defendant] concealed its close relationship with [the other company] and because there is no indication that [the union] ha[d] not received the full benefit of its collective bargaining agreement[,] . . . the application of the alter ego doctrine [was] inappropriate . . . ."); Flynn v. Interior Finishes, Inc., 425 F. Supp. 2d 38, 56 (D.D.C. 2006) ("Paraphrasing the First Circuit, 'there is no evidence that [Interior Finishes] deceived the [Fund] about its structure, ownership, relationship with [RHI], or the fact that [RHI] regularly subcontracts with non-unionized [installers].' Therefore, there is no equitable basis for holding RHI liable to make contributions to the Fund.") (quoting A.A. Bldg. Erectors, Inc., 343 F.3d at 22). *Second*, there was "no indication that the relationship between [union employer] and [non-union employer] has changed over the years or has caused the [union] to receive less than that for which it bargained."[5] Id.

---

doctrine's characteristic criteria-e.g., continuity of ownership between the corporations, management overlap, similarity of business purpose, evidence that the non-union entity was created to avoid an obligation in a collective bargaining agreement." Id.

[5] First Circuit decisions prior to A.A. Building are inapposite as they did not address the issue whether the alter ego doctrine applies where, as here, there is no allegation of deception about the defendant corporations' relationship and/or that the union was "worse off" because of some structural change in that relationship. See, e.g., Massachusetts Carpenters Cent. Collection Agency v. Belmont Concrete Corp., 139 F.3d 304, 305 (1st Cir. 1998) (union was clearly harmed because union company failed to make payments owed under CBA holding non-union company liable under alter ego doctrine); N.L.R.B. v. Hosp. San Rafael, Inc., 42 F.3d 45, 52 (1st Cir. 1994) (deferring to NLRB's application of alter ego doctrine based on "substantial evidence" standard where union employer pre-existed non-union employer and there was "anti-union animus"); C.E.K. Indus. Mech. AEC, Inc. v. N.L.R.B., 921 F.2d 350, 355 (1st Cir. 1990)

The alter ego doctrine applies only "in the face of some corporate 'change' which has

caused a union to be in a worse position than it was in prior to the change." Id. at 22.

Again, mere allegations that defendant companies in a double breasted operation

share many characteristics and resources, which is all the Funds allege, does not permit a

plaintiff to bind the non-union employer to a CBA: "Here, plaintiffs have provided us

with ***no reason to apply the doctrine other than*** pointing out that, unbeknownst to them

until recently, ***many of the criteria necessary for an*** **alter ego** ***finding characterize the***

***relationship between [non-union employer] and [union employer].*** As we have

explained***, this is not enough.***" A.A. Bldg. Erectors, Inc., 343 F.3d at 22 (emphasis

supplied). To conclude otherwise "would be tantamount to holding that a common

ownership group cannot control affiliated but nominally separate corporations to service

similar union and non-union markets-a proposition that would be at odds with circuit

precedent." Id. at 23 (citing C.E.K. Indus. Mech. AEC, Inc. v. N.L.R.B.,, 921 F.2d 350,

352 (1st Cir. 1990).

Although the Funds do allege briefly, and summarily, that AEI and AEC "have

worked together to evade their obligations to the Funds," they have failed to articulate

any way they supposedly did so than by allegedly sharing business characteristics.

Complaint, ¶48.  Such a "'naked assertion' devoid of 'further factual enhancement,'"

however, fails to allege fraud or deception, fails to do so with particularity and is, as a

matter of law, an insufficient basis for Plaintiffs' alter ego theory to survive. Iqbal, 556

U.S. at 678 (quoting Twombly, 550 U.S. at 557); Fed. R. Civ. P. 9(b) ("In alleging fraud

or mistake, a party must state with particularity the circumstances constituting fraud or

---

(deferring to NLRB's application of alter ego doctrine based on "substantial evidence" standard where
there was clear evidence of "the important factor of anti-union animus").

mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."). The word "fraud" does not even appear in the Complaint. See generally Complaint.

### b. Sharing Employees Does Not Bind a Non-Union Company to a CBA.

Importantly, courts have explained that the sharing of employees by companies in a "double-breasted" operation is insufficient to justify the application of the alter ego doctrine. Flynn, 425 F. Supp. 2d at 52–53 (granting defendant-employers' motion for summary judgment).[6] In Flynn v. Interior Finishes, Inc., the D.C. District Court refused to apply the alter ego doctrine to impose liability on the non-union company defendant where it undertook "the very same work [as the union company] with many of [the union company's] former unionized employees, but now on a non-union basis." Id. at 54. There, the union company had slowed its business to the point where many of its unionized employees began working for the non-union company instead of the union company. Id. The court concluded that the plaintiff fund's assertion that the shift of employees to the non-union company caused the fund to "receive[] less contributions than it was due" was "without merit." Id. Citing A.A. Building Erectors, the court explained that the plaintiff fund was not "worse off" because the non-union company did not take any union work. Id.

---

[6] In Rodin, there was evidence in the summary judgment record that union members worked for the non-union company. There, the Ninth Circuit held that there was no basis for imposing liability upon the defendant-employers. See SOUTHERN CALIFORNIA PAINTERS & ALLIED TRADES, District Council No. 36, Plaintiff and Appellant, v. RODIN & CO., INC., and, Southern California Painting, Inc., Defendants and Appellees., 2006 WL 4040448, at *7 (C.A.9) ("[Non-union company's] and [union company's] painters were also interchanged."), Opening Brief of Plaintiff-Appellant, a true and correct copy of which is attached here as Exhibit B. Consistent with A.A. Building Erectors, the Ninth Circuit did not find that evidence relevant in ruling in favor of defendant-employers on their motion to dismiss plaintiff-funds' alter ego claim. 558 F.3d at 1032–33.

Indeed, the National Labor Relations Act precludes non-union employers like AEC from discriminating in hiring laborers based upon of their union member status. "It shall be an unfair labor practice for an employer . . . to interfere with [the employment rights] guaranteed in section [157] . . . by discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization . . . . " 29 U.S.C. § 158; N.L.R.B. v. Town & Country Elec., Inc., 516 U.S. 85, 98, 116 S. Ct. 450, 457, 133 L. Ed. 2d 371 (1995) (even paid union organizers (and by implication unpaid organizers or union members) may be protected individuals under the National Labor Relations Act).

    **c.   Plaintiffs May Not Pursue a "Reverse Alter Ego" Theory.**

Courts across the country have rejected the use of the alter ego doctrine to bind a non-union employer to a collective bargaining agreement it never signed where ***the non-union employer pre-existed the union employer***, known as an impermissible reverse alter ego doctrine. See Massachusetts Carpenters Cent. Collection Agency v. A.A. Bldg. Erectors, Inc., 208 F. Supp. 2d 94, 98–99 (D. Mass. 2002), aff'd, 343 F.3d 18 (1st Cir. 2003). Here, AEI operated exclusively as a non-union employer for years before it signed the CBA and AEC was formed to continue to pursue non-union work as part of a double-breasted operation.  The Complaint fails to allege that Plaintiffs were unaware of this "double-breasted" relationship or that it was used to shift union work to the non-union company. See generally Complaint.

The Ninth Circuit Court of Appeals aptly defined the reverse alter ego theory, which plaintiffs like the Funds have consistently tried, and failed, to append to the actual alter ego doctrine:

Whereas a traditional alter ego claim consists of a *union* employer opening

a *non-union employer* to avoid *existing* collective bargaining obligations, the Union's novel 'reverse' alter ego claim consists of a *non-union* employer allegedly opening a *union employer* to avoid *future* collective bargaining obligations.

S. California Painters & Allied Trades, Dist. Council No. 36., 558 F.3d at 1032.

Courts in the Ninth, Sixth, Seventh, and D.C. Circuits have rejected such a reverse alter ego theory, often following the First Circuit's decision in A.A. Bldg. Erectors.[7] As the Ninth Circuit stated, "Because the alter ego doctrine prevents union employers from avoiding collective bargaining obligations, it does not apply in the 'reverse' where a non-union employer creates a union employer because the non-union employer has no collective bargaining obligations to avoid." S. California Painters & Allied Trades, Dist. Council No. 36, 558 F.3d at 1032–33.

As this Court (Stearns, J.) explained in the underlying decision in A.A. Bldg. Erectors, the creation of the union employer and collective bargaining agreement after the non-union employer ***benefited*** and did not harm the union:

> [T]he peculiar facts of this case [where the non-union employer existed before the union employer] are at odds with the policy underlying the alter ego doctrine. The purpose of the doctrine is to prevent union employers

---

[7] Id at 1032–33 ("We decline to recognize a 'reverse' alter ego doctrine. The alter ego doctrine was never intended to coerce a non-union employer into becoming a union employer by requiring its compliance with a collective bargaining agreement it never signed . . . ."); Trustees of Painters Union Deposit Fund v. Interior/Exterior Specialist, Co., No. 05-70110, 2008 WL 724355, at *14 (E.D. Mich. Mar. 18, 2008) aff'd, 371 F. App'x 654 (6th Cir. 2010) (concluding that the Sixth Circuit Court of Appeals in Trustees of Resilient Floor Decorators Ins. Fund v. A & M Installations, Inc., 395 F.3d 244, 247 (6th Cir. 2005) found "the entire application of the alter ego doctrine not appropriate, when a union employer follows a non-union employer and there is no preexisting labor obligation") (citing A.A. Bldg. Erectors); Trustees of Resilient Floor Decorators Ins. Fund, 395 F.3d at 247 (granting defendant-employer's motion for summary judgment because where union employer was formed after non-union employer there was no "change in the structure or operations of the employer with whom the collective bargaining agreement was negotiated" that had made the union "somehow worse off") (quoting (citing A.A. Bldg. Erectors, 343 F.3d at 21, 22); Flynn, 425 F. Supp. 2d at 52–53 (D.D.C. 2006) (granting summary judgment for defendant-employer because where the non-union employer was formed before the union employer the union was not "worse off" than before the union employer was formed) (quoting A.A. Bldg. Erectors, 343 F.3d at 18, 21, 22); Chicago Dist. Council of Carpenters Pension Fund v. Vacala Masonry, Inc., 946 F. Supp. 612, 618 (N.D. Ill. 1996) (granting summary judgment for defendant-employer and concluding that the reverse alter ego doctrine is "patently inequitable and illogical," because a company that has not signed a collective bargaining agreement cannot avoid such an agreement).

from using phantom subsidiaries as a means of escaping their obligations under a CBA. ***In the context of this case, the question is whether [non-union employer] created [union employer] to avoid making contributions to the [union's] fund. The answer is rather self-evident.*** *See Architectural Iron Workers Local No. 63 Welfare Fund et al. v. United AEC, Inc. and United Skys, Inc.* 46 F.Supp.2d 769, 789 (N.D.Ill. 1999) ("We find, as did the court in *Favia*, that far from attempting to evade union obligations, the defendants, by creating AEC and allowing to become a union shop, were responsible for benefit fund contributions that would not have otherwise been made.") ***The alter ego doctrine, in short, does not contemplate the case of a non-union employer seeking a lawful means to employ union workers without sacrificing its non-union status.***

Massachusetts Carpenters Cent. Collection Agency, 208 F. Supp. 2d at 98–99 (emphasis supplied).

Put simply, Plaintiffs efforts to predicate their Complaint on an alter ego theory fails at every level as a matter of law based upon what is and is not alleged in the Complaint. Here, where the Complaint fails to plead that Defendants used their double breasted operation to defraud them or that they did not know that AEI and AEC were set up and operating as a double breasted operation, the alter ego theory is unavailable as a matter of law. See generally Complaint. To allow Plaintiffs to pursue such a theory based upon mere allegations of shared resources, and even assuming that the companies shared *all* of their workers, is not enough and would be a radical departure from existing law.

**II.     Plaintiffs' "Single Employer" Theory Fares No Better.**

Plaintiffs "single employer" theory likewise fails as a matter of law.  First, it is black letter law that a single employer determination, which is all that the Funds plead, is insufficient alone to bind a non-signatory to a CBA. Penntech Papers, Inc. v. N.L.R.B., 706 F.2d 18, 24 (1st Cir. 1983). Second, under the plain language of the National Labor Relations Act, as interpreted by the Supreme Court of the United States and multiple Circuit Courts of Appeals, this Court lacks jurisdiction to make the sole determination

13

that could hypothetically bind a non-signatory to a CBA, namely that AEI and AEC are the "appropriate bargaining unit." <u>S. Prairie Const. Co.</u>, 425 U.S. at 803–804.

  **a. Plaintiffs Cannot Use A "Single Employer" Theory to Avoid the Requirements of the Alter Ego Doctrine.**

  Plaintiffs improperly seek here to use the "single employer" theory to avoid their inability to satisfactorily plead an alter ego claim. As the First Circuit has explained, however, "[i]t is the ***alter ego finding which will bind a nonsignatory*** to a collective bargaining agreement, ***not a finding of single employer status.***" <u>Pennetech Papers, Inc.</u>, 706 F.2d at 24 (emphasis supplied); <u>see</u> <u>Bd. of Trustees of Chicago Plastering Inst. Pension Trust Fund v. William A. Duguid Co.</u>, 761 F. Supp. 1345, 1357 (N.D. Ill. 1991) ("An alter ego finding binds a nonsignatory to a collective bargaining agreement, but a single-employer finding in and of itself will not."). The First Circuit so declared because the alter ego doctrine and single employer status are conceptually distinct: "[t]he focus of the alter ego doctrine, unlike that of the single employer doctrine, is on the existence of a disguised continuance of a former business entity or an attempt to avoid the obligations of a collective bargaining agreement, such as through a sham transfer of assets." <u>Id</u>. (citing <u>Carpenters Local 1846 v. Pratt-Farnsworth, Inc.</u>, 690 F.2d 489, 508 (5th Cir.1982)). "A second rubric—the 'single employer' doctrine—has its primary office in the case of two ongoing businesses which the NLRB wishes to treat as a single employer on the ground that they are owned and operated as a single unit." <u>N.L.R.B. v. Hosp. San Rafael, Inc.</u>, 42 F.3d 45, 50 (1st Cir. 1994); <u>see</u> <u>Local Union No. 59, Int'l Bhd. of Elec. Workers, AFL-CIO v. Namco Elec., Inc.</u>, 653 F.2d 143, 147 (5th Cir. 1981) ("Whether two firms are a single employer for collective bargaining purposes and whether a single contract is binding on two separate corporations are not only different questions, but they

may have different answers."). The National Labor Relations Board (the "Board") has been clear that, as described above, "more must be shown to establish that one organization is the *alter ego* of another [than to show it is a single employer], since the *alter ego* theory may be relied upon to bind one company, not signatory to an agreement, to the agreement of another company." Naccarato Constr. Co., 233 NLRB 1394, 1398-99 (1977).

In other words, companies that are "joined at the hip," as the Funds allege AEI and AEC are, may be a single employer but that finding does not bind a non-signatory company to a CBA. A.A. Bldg. Erectors, Inc., 343 F.3d at 22. If this Court were to expand the impact of the single employer determination to bind non-signatories to a CBA it would render meaningless the carefully rendered jurisprudence of federal courts across the country, including in the First Circuit, about the alter ego doctrine and the heightened burden a plaintiff must meet to bind a non-signatory to a CBA.

**b.  Only The NLRB Can Determine Whether AEI And AEC Are A "Single Appropriate Bargaining Unit."**

Apart from the alter ego doctrine, a non-union company may, theoretically, be bound to a CBA where the NLRB finds that employees of the non-union and union company comprise a "single appropriate bargaining unit," and not merely a single employer. See 29 U.S.C. § 159(b). Indeed, "absent a finding that the [] employees of both Companies constitute a single appropriate bargaining unit, [a single employer finding] is insufficient to hold both Companies to the terms of the [Collective Bargaining] Agreement." C.E.K. Indus. Mech. AEC, Inc, 921 F.2d at 354; Langone v. C. Walsh Inc., 864 F. Supp. 233, 238 (D. Mass. 1994), aff'd sub nom. Langone v. William Walsh, Inc., 101 F.3d 106 (1st Cir. 1996) ("[A] finding of single employer status does not mean that

one business is bound by a union contract signed by another unless there is an additional finding that the employees of each constitute a single appropriate bargaining unit.").

The National Labor Relations Act (the "NLRA") makes explicit that it is the obligation of the NLRB to decide in each instance what constitutes an appropriate bargaining unit. In particular, Section 9(b), entitled **"**Determination of bargaining unit by Board," provides: "The Board ***shall decide*** in each case . . . the unit appropriate for the purposes of collective bargaining shall be the employer unit, craft unit, plant unit, or subdivision thereof . . . ." 29 U.S.C. § 159(b) (emphasis supplied); see Big Y Foods, Inc. v. N.L.R.B., 651 F.2d 40, 45–46 (1st Cir. 1981) ("The Act vests in the NLRB extraordinarily broad discretionary powers to decide the appropriate unit."). Thus, "[u]nder the single employer theory, a collective bargaining agreement can extend to a non-union employer only if the NLRB finds that the employees of both the union and non-union companies constitute a single bargaining unit." UA Local 343 v. Nor-Cal Plumbing, Inc., 48 F3d 1465, 1469–70 (9th Cir. 1995).

The United States Supreme Court in S. Prairie Const. Co. v. Local No. 627, Int'l Union of Operating Engineers, AFL-CIO ("South Prairie") confirmed that under the NLRA the determination of what constitutes an "appropriate bargaining unit" is within the sole jurisdiction of the NLRB. 425 U.S. 800, 803–804 (1976). Any court that makes a judicial determination about the definition of an "appropriate bargaining unit" on its own has "invaded the statutory province of the [NLRB]." South Prairie, 425 U.S. at 803–804

In South Prairie, a union claimed that a non-union construction company and union construction company were a "single employer" and single "bargaining unit" such that the non-union company should be bound to the union company's CBA. 425 U.S. at

801. The Court of Appeals for the D.C. Circuit initially agreed. Id. The Supreme Court, however, vacated the D.C. Circuit's decision as to whether the companies constituted a single "bargaining unit" because Section 9(b) of NLRA, quoted above, placed that question within the sole jurisdiction of the NLRB. Id. at 804-05. The Supreme Court concluded that by invading on the NLRB's jurisdiction, the D.C. Circuit "did not give due observance [to] the distribution of authority made by Congress as between its power to regulate commerce and the reviewing power which it has conferred upon the courts under Article III of the Constitution." Id. at 806 (internal quotation omitted).

### c.   The Labor Management Relations Act Does Not Grant this Court Jurisdiction to Determine the "Appropriate Bargaining Unit."

Section 301 of the Labor Management Relations Act ("LMRA") does provide courts authority to consider "[s]uits for violation of contracts between an employer and a labor organization," CBAs. 29 U.S.C.A. §185(a). However, the determination of the "appropriate bargaining unit" is not a contract question within Section 301. 29 U.S.C. §159(b); Local 3-193 International Woodworkers v. Ketchikan Pulp Co., 611 F.2d 1295, 1301 (9th Cir. 1980) ("Congress did not intend by enacting Section 301 to vest in the courts initial authority to consider and pass upon questions of representation and determination of appropriate bargaining units."). As the NLRB has explained, "[t]he determination of questions of representation, accretion, and appropriate unit do not depend upon contract interpretation but involve the application of statutory policy, standards, and criteria." Marion Power Shovel Co., Inc., 230 NLRB 576, 577–78 (1977).

Including following South Prairie, many federal courts have recognized they lack jurisdiction to consider the appropriate bargaining unit question. As the Ninth Circuit put it, "While § 301 grants the district court jurisdiction to decide whether employers

17

constitute a single employer, we conclude that it does not extend to the determination of the second part of the issue, the appropriateness of the bargaining unit." Bhd. of Teamsters, Local No. 70 v. California Consolidators, Inc., 693 F.2d 81, 83–84 (9th Cir. 1982); UA Local 343, 48 F3d at 1469–70 ("[T]he doctrine of primary jurisdiction bars the district court from extending a collective bargaining agreement to a non-union entity."). The Third Circuit agrees: "[t]he NLRB has the exclusive power and duty to determine questions as to the appropriate bargaining unit subject to review by Circuit Courts of Appeal. Determination of the proper representative unit is a matter that Congress has left for the expertise of the NLRB." Confederated Indep. Unions v. Rockwell-Standard Co., 465 F.2d 1137, 1140–41 (3d Cir. 1972).

Indeed, "Congress has delegated the responsibility for determining which groups of employees constitute an appropriate unit . . . to the NLRB through the National [Labor] Relations Act. A court which would take on that responsibility in order to decide an issue dependent on such determination . . . *would be ignoring the heart and soul of this nation's labor policies as delineated by Congress*." Local No. 160, United Ass'n of Journeyman & Apprentices of Plumbing & Pipefitting Indus. of U.S. & Canada v. Monroe Mech. AEC, Inc., 652 F. Supp. 1277, 1280 (S.D. Ill. 1987) (emphasis supplied); see Davey v. Fitzsimmons, 413 F. Supp. 670, 678 (D.D.C. 1976) ("Since plaintiffs concede that the appropriateness of a bargaining unit is a matter within the exclusive jurisdiction of the National Labor Relations Board, their claim, viewed in this perspective, entitles them to no relief under section 301 of the NLRA.").

If courts had jurisdiction to determine the appropriate bargaining unit it "would render section 9(b) of the National Labor Relations Act meaningless, for every dispute

18

concerning the appropriate bargaining unit could be recast in terms of a breach of an 'alleged' bargaining agreement." <u>Couchigian v. Rick</u>, 489 F. Supp. 54, 57 (D. Minn. 1980) (holding that where the existence of a CBA turns on the factual determination of the appropriate bargaining unit, the NLRB has exclusive jurisdiction of that determination under Section 9(b) of the NLRA); <u>see</u> <u>Computer Scis. Corp. v. N.L.R.B.</u>, 677 F.2d 804, 808 (11th Cir. 1982) ("We are concerned that allowing initial court determination of unit questions via contempt proceedings would set courts of appeals on a course of developing their own standards for unit appropriateness-standards which might reflect judgments differing from those of the agency with expertise in labor matters.").

Although the First Circuit has not directly confronted the question of courts' jurisdiction to determine the appropriate bargaining unit, it has indicated its recognition that courts lack such jurisdiction because the NLRA explicitly delegates that determination to the NLRB. The appropriate bargaining unit determination "is one for which no AEI rule of law is laid down by statute, and ***none should be by decision [of a court]***. It involves of necessity a large measure of informed discretion, and the decision of the Board, if not final, is rarely to be disturbed." <u>Marriott In-Flite Servs., a Div. of Marriott Corp. v. N.L.R.B.</u>, 652 F.2d 202, 204–05 (1st Cir. 1981) (emphasis supplied).

Although other courts have construed <u>South Prairie</u> narrowly (and incorrectly) as not constraining courts' jurisdiction over the determination of the "appropriate bargaining unit," in doing so they have improperly ignored the careful delineation of responsibility between the courts and the NLRB that Congress established through the LMRA and NLRA, described above. See <u>Carpenters Local Union No. 1846 of United Bhd. of</u>

19

<u>Carpenters & Joiners of Am., AFL-CIO v. Pratt-Farnsworth, Inc.</u>, 690 F.2d 489, 515 (5th Cir. 1982), <u>amended,</u> (5th Cir. Dec. 8, 1982) (interpreting Section 9(b) to refer "only to cases pending before the Board under the NLRA"); <u>Brown v. Sandimo Materials</u>, 250 F.3d 120, 129 (2d Cir. 2001) (holding that the NLRB does not have exclusive jurisdiction over the appropriate bargaining unit determination). Indeed, those decisions impermissibly render without effect Section 9(b)'s requirement that the NLRB make the appropriate bargaining unit determination in each instance. If courts had jurisdiction over the appropriate bargaining unit question, parties could bypass the NLRB in every instance, and would thus be encouraged to engage in forum shopping as between the NLRB or a court. <u>See</u> <u>Couchigian</u>, 489 F. Supp. at 57.

At bottom, this Court lacks jurisdiction to make the determination of whether the employees of AEI and AEC constituted an "appropriate bargaining unit." For that reason, and given the failure of the Complaint to allege the requirements for an alter ego finding, AEI and AEC submit that the Complaint must be dismissed.

### v. Conclusion

For all of the reasons set forth above, the Court should dismiss the Complaint.

ABSOLUTE ENVIRONMENTAL, INC.
and ABSOLUTE ENVIRONMENTAL
CONTRACTORS, INC.

By their attorneys,


/s/ Benjamin J. Wish
Howard M. Cooper (BBO #543842)
Benjamin J. Wish (BBO #672743)
TODD & WELD LLP
One Federal Street, 27th Floor
Boston, MA 02110
(ph) (617) 720-2626

Dated:  June 30, 2017

CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that I served a true copy of the above document upon all parties with an interest in this matter by electronically filing through this Court's CM/ECF filing system this 30th day of June, 2017.

/s/ Benjamin J. Wish
Benjamin J. Wish, Esq.